**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Williams,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Levi Khan, et al.,<br><br>　　　　　Defendants. | No. CV-17-00029-TUC-BPV<br><br>**ORDER** |

Pending before the Court are two motions by Plaintiff Elizabeth Williams: a Motion for Partial Summary Judgment Against Defendant Erika Campas ("C Motion") (Doc. 100) and another against Defendants Rosebeck and Davis ("R&D Motion") (Doc. 101). Also before the Court is Defendant Erika Campas' Partial Cross–Motion for Summary Judgment (Doc. 106) ("Cross–Motion").

The motions ask the Court to decide whether the search and seizure at the home of Ms. Williams and the subsequent removal of her children permit summary judgment for either party. What is undisputed is that Arizona Department of Child Safety employee Erika Campas entered Ms. Williams' residence when Ms. Williams was absent, looked into the bedrooms, and discovered marijuana plants. Also present were Tucson Police Department Officers James Davis and Gary Rosebeck (collectively "TPD officers"); Williams' babysitter; Williams' father, Randall Williams ("Randall"); and her two children. After the search, Campas temporarily removed the children from the home and placed them in foster care for several days before placing them with the paternal

grandparents.

Ms. Williams' C Motion asks the Court to grant partial summary judgment in her favor on Claim One alleging Illegal Search and Seizure under 42 U.S.C. § 1983. Ms. Williams' R&D Motion also asks the Court to grant summary judgment in Ms. Williams' favor on Claim One. To grant the motions would require the Court find there is no genuine issue of material fact as to whether the Defendants' entry and search of Ms. Williams' home violated her Fourth Amendment rights.

Defendant Campas' Cross–Motion asserts that Count Two of the FAC should be summarily dismissed. Count Two alleges that Campas violated Ms. Williams' right to familial association under the First and Fourteenth Amendments when she removed Williams' children without a warrant or court order. Campas argues she is immune from suit because she is entitled to qualified immunity. Even if she were not immune, she claims no constitutional violation occurred because Ms. Williams consented to voluntary placement of her children approximately a week later.

## I. Summary Judgment Standard

The court may grant summary judgment only if a movant has demonstrated there is no genuine issue of material fact and "movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If, considering the alleged facts in the light most favorable to the non–moving party, a reasonable jury could find in favor of that party, there is a genuine dispute of material fact precluding summary dismissal. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

The moving party must first identify the portions of the record, if any, that demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The movant, if carrying "the burden of proof on an issue at trial, . . . must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, if the non-moving party bears the burden, "the moving party need only prove that there is an absence of evidence to support the non–moving party's case." *In re Oracle Corp. Secs. Litig.,* 627

F.3d 376, 387 (9th Cir. 2010).

If the movant cannot meet its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if movant meets its burden, it shifts to the nonmovant who must show there is a material factual dispute; meaning, certain disputed facts exist that could affect the outcome in non–movant's favor. *Anderson*, 477 U.S. at 248, 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant does not need to show the material issues of fact are irrefutable, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, there must exist "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c)(1); *see Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In the cross–summary judgment evaluation, the court must "review each motion . . . separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 167 (2017). In addition, the court may consider either parties' evidence in the opposing parties' motion when deciding whether to grant either summary judgment motion. *See Fair Hous. Council v. Riverside Two,* 249 F.3d 1132, 1136-37 (9th Cir. 2001).

Even though the court may evaluate either parties' evidence, evidence must be admissible to be considered. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (court may strike inadmissible declarations and other evidence). Furthermore, a party cannot create a genuine issue of material fact by making barren assertions in its legal memoranda. *See Varig Airlines v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (1982).

It is not within the court's purview to weigh evidence at the summary judgment stage, the court should merely determine whether there is a genuine dispute appropriately resolved at trial. *Anderson*, 477 U.S. at 249. After reviewing the summary judgment record, if jurors of reason could decide by a preponderance of the evidence that plaintiff is entitled

to relief, then summary judgment is improper. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027-28 (9th Cir. 2006). But, if jurors of reason could not find a defendant liable then summary judgment is appropriate. *Id.*

**II.   Count One: Unreasonable Search and Seizure**

Plaintiff's summary judgment motions claim that there is no genuine issue of material fact as to whether Campas and the TPD officers reasonably believed that Randall had actual or apparent authority to consent to the search of the home or even whether Randall did, in fact, consent. (Docs. 100 at 4-12; 101 at 9-14.) Ms. Williams further argues that even if there was authority to enter the home, Campas and the TPD officers exceeded that authority when they searched the bedrooms. *Id*.

**III.   Actual or Apparent Authority for Search**

Like other governmental officials, a child safety worker's actions during investigations are subject to the Fourth Amendment. *See Camara v. Mun. Ct. of the City and Cnty. of San Francisco*, 387 U.S. 523, 530-31, 34 (1967). Under the Fourth Amendment, individuals are afforded the right to be free of unreasonable searches and seizures. U.S. CONST. amend. IV. Warrantless searches of a home are "presumptively unreasonable." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) (quoting *Payton v. N.Y.*, 445 U.S. 573, 586 (1980)). However, consent acts as an exception to the warrant requirement. *Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010). Consent may occur when a third party with either actual or apparent authority agrees to a search. *Ill. v. Rodriguez*, 497 U.S. 177, 181 (1990). In a civil matter, the burden is on the plaintiff to demonstrate that the third party had no actual or apparent authority to consent. *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).

Actual authority exists when the person consenting enjoys "shared use and joint access to or control over a searched area" or "the owner of the property to be searched has expressly authorized a third party to give consent to the search." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993). "The consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that

authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974).

Absent actual authority, a warrantless search may still be permissible if the consenting individual has apparent authority. *Welch*, 4 F.3d at 764. With apparent authority, a search is valid if "the officers who conducted it reasonably believed that the person from whom they obtained consent had actual authority to grant that consent." *Id*. Apparent authority exists when: (1) the officers believed a fact that turned out to be untrue; (2) the belief was objectively reasonable; and (3) if true, the fact would mean that the third party had actual authority. *United States v. Enslin*, 327 F.3d 788, 793-94 (9th Cir. 2003). The United States Supreme Court held that apparent authority is an objective standard. *Rodriguez*, 497 U.S. at 188–89. If under the totality of the circumstances a reasonable officer could believe a third party had authority over the area to be searched, apparent authority exists and the search may be deemed reasonable. *Id*.

Defendants argue there is a genuine issue whether it was reasonable to believe that Randall had actual or apparent authority to consent to the search of Ms. Williams' home. At the outset, Officer Rosebeck contests Ms. Williams' assertion that she explicitly informed him he was not permitted to enter the home. Officer Rosebeck also claims that when he spoke to Ms. Williams over the phone, he explained the scope of his search, stating that "DCS . . . wanted to check inside and check on the condition of the house and the children." He did not ask to enter the house, nor did she indicate that he could not enter at that time. Rather, Rosebeck's understanding was that he would wait until Ms. Williams arrived to proceed. But, Campas alleges Ms. Williams called her father Randall for assistance, and he came to the home at Ms. Williams' direction. When Randall arrived, he opened the front door, walked through it, and showed Defendants into the home. Defendants allege Randall indicated either "this was my house," "I own the house," or "I rent the house." He never indicated that he owned it for the benefit of Ms. Williams or his grandchildren. When Defendants asked to enter, Randall responded that they could do "whatever you need to do." These circumstances gave Defendants reason to believe Randall was an occupant of the home and his consent to enter and check the house and the

1 children for safety concerns acceptable.

Campas further claims that the scope of the search (into the bedrooms) was permissible because of Randall's consent. Moreover, Campas and assistant Daniella Bojorquez also stated it was their custom and practice to ask permission before walking through the home to assess safety concerns and they believed they did so in this instance. Even if the consent did not extend to the bedrooms, Defendants Rosebeck and Davis allege that the marijuana plants were in plain view during the safety check of the home. Finally, Campas asserts that she was permitted to rely upon the TPD officers' information suggesting the entrance into the home was permissible under a warrant exception.

Ms. Williams alleges that Randall did not have authority to consent and Defendants' belief that Randall had either actual or apparent authority was objectively unreasonable. She claims that Campas and the TPD Officers knew that Ms. Williams lived in the home, and they had no idea Randall's relationship to it. Furthermore, Defendants had the obligation to clarify whether Randall had merely an ownership interest or shared use of the property. Ms. Williams asserts that to obtain consent to searching the entire house, it needed to be unequivocal and specific, and Defendants could not merely rely on Randall's statement "do what you have to do" without inquiring further.

The Court finds there is a genuine issue of material fact that precludes summary judgment on this matter. A jury could find that under the circumstances Campas held a reasonable belief that Randall had authority to consent to the entry and search of the home because Randall indicated the house was his, he was able to access and enter the home, he acted as though he could grant entry, and he never withdrew his consent. In addition, Defendants knew that Ms. Williams was in contact with Randall to help with the events unfolding at the home. To determine whether the search was unreasonable, the Court would need to engage in a credibility determination, something that is appropriately left to a jury. Viewing the evidence in the light most favorable to the non-moving party, a jury could conclude that (1) Defendants believed an untrue fact (that Randall owned the home), and (2) if this fact had been true, it would have given Randall actual authority to consent to a

search of the home. Furthermore, a jury could determine that Randall consented to a safety search of the home and that the marijuana plants were in plain view. This raises a genuine, material factual issue for a jury, which applies not only to Ms. Campas, but to the TPD officers as well.

## IV. Qualified Immunity

On Tuesday, December 23, 2014, after searching Williams' home and discovering the marijuana plants, Campas temporarily removed Williams' children, placing them in foster care. Campas claims the basis for the removal was the accessibility, the amount, and the odor of marijuana and criminal activity in the home (i.e. the presence of the marijuana plants). (Doc. 106 at 3.) Ms. Williams contends that the marijuana plants were not accessible to the children, she never exposed them to marijuana, and her home did not have an odor of the drug. She asserts that instead of placing her children in foster care, Campas could have left them with Randall or with the paternal grandparents, who resided in Phoenix, but instead of making an inquiry into this matter, Campas simply placed them in foster care. Six days later, on Monday, December 29, 2014, a Team Decisionmaking Meeting was held, and Ms. Williams signed a Voluntary Placement Agreement that placed her children with their paternal grandparents anyway.

Ms. Williams' Count II alleges that Campas unconstitutionally removed her children, resulting in the children being taken away from her for three months. Campas' Cross–Motion asserts that she is immune from suit for any perceived violation of Williams' right to familial association because she is subject to qualified immunity. Campas asserts that the law was not clearly defined on whether removal of children from a home where children were exposed to marijuana was a constitutional violation. Furthermore, Campas claims that under case law, nothing limits the injury necessary for warrantless removal to potential physical injury; exposure to marijuana is sufficient. Nevertheless, Campas claims she did not have state statutory authority to request a court order for removal. In a final argument, Campas contends that no violation occurred

because Ms. Williams subsequently agreed to voluntary placement of the children outside her care.

Qualified immunity protects a public official from suit under § 1983 "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). It is Plaintiff's burden to show the right was "clearly established" at the time of the event. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). A clearly established right is one in which "every reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted). "[C]learly established law should not be defined at a high level of generality" but "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citation and quotation marks omitted).

The court may determine as a matter of law whether the right was clearly established and an official should have known of the right. *LSO*, 205 F.3d 1157. When the reasonableness of an officer's actions depends on disputed material facts, the issue is best left to a jury. *See Wilkins v. City of Oakland*, 350 F. 3d 949, 956 (9th Cir. 2003), *cert. denied,* 543 U.S. 811 (2004) (citing *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (listing several circuits in agreement)).

### a. Right to Familial Association

> Parents and children have a well–elaborated constitutional right to live together without governmental interference . . . The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies. . . . Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in *imminent danger of serious bodily injury* and that the *scope of the intrusion is reasonably necessary to avert that specific injury*.

*Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (internal citations and quotation marks omitted) (emphasis added). "The existence of reasonable cause, and the

- 8 -

related questions, are all questions of fact to be determined by the jury. . . . Summary judgment in favor of the defendants is improper unless, viewing the evidence in the light most favorable to the plaintiffs, it is clear that no reasonable jury could conclude that the plaintiffs' constitutional rights were violated." *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 1999.) "The imminent nature of the threat must be that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Birair v. Kolycheck*, CV-15-01807-PHX-DJH, 2018 WL 4220759, at *9 (D. Ariz. Sept. 5, 2018) (quotation marks omitted).

The Court finds that a parent's right to not have her child removed without a court order was well established at the time of the removal of Ms. Williams' children. *See id.*; *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). Also clearly established was the requirement of imminent danger of serious bodily injury for permission to remove a child without a warrant. *See id.*; *Kirkpatrick v. Washoe*, 843 F.3d 784, 790 (9th Cir. 2016).

Due to the numerous factual disputes, the Court cannot grant summary judgment to Campas. The parties disagree whether the children had any access to the marijuana plants and whether the home smelled of marijuana. Furthermore, there is no indication that the plants had been processed for use, so the children's level of "exposure" is disputed. Williams claims she never smoked marijuana in front of them, and claims her home does not smell of the drug. Ms. Williams also asserts that the plants were put away in inaccessible closets, while Defendants suggest the plants were in plain view in the open bedrooms.

Simple use of marijuana does not necessarily warrant removal if it does not affect the child; however, if the child is exposed to and has access to marijuana, these factors permit warrantless removal of a child. *See Hudson v. City of Salem*, 2009 WL 1227770, at *25 (D. Or. May 1, 2009). Defendants contention that the children were in imminent danger because they stated they watered the plants is not persuasive, if the mere presence and watering of a dangerous plants caused imminent risk of serious bodily injury, then any parent with an oleander plant may risk losing a child. The Court is not permitted to decide

the reasonableness of removal given these alleged facts, this is an issue for a jury.

Viewing the facts in the light most favorable to Ms. Williams, there is a genuine issue as to whether Campas had reason to believe that the children were in danger of serious bodily injury during the time it would take to procure a warrant for the children's removal. *Lewis v. County of San Diego*, 3:13-CV-02818-H-JMA, 2017 WL 3582960, at *2 (S.D. Cal. Aug. 18, 2017) (jury determined children's removal because of exposure to marijuana lab, paraphernalia, and flammable gases was an unreasonable violation of right to familial custody but found no liability because the acts were not deliberately indifferent).

The Court finds the parties' other arguments about the subsequent Decisionmaking Meeting and Voluntary Placement Plan irrelevant to the issue of whether the initial removal was permissible and whether Campas enjoys qualified immunity. Furthermore, Campas' claim that she did not have the ability to apply for a court order under existing state law is undermined by the abundance of caselaw permitting warrantless removal for imminent danger of serious bodily injury and conflicts with her argument that it was the imminent danger that permitted warrantless removal.

Accordingly, **IT IS ORDERED**:

1. All three motions for summary judgment are **DENIED**. (Docs. 100, 101, 106.)
2. Due to the undersigned's retirement, this case is **REASSIGNED** to the Honorable Eric J. Markovich. All further filings in this matter shall be designated:

**CV-17-00029-EJM**

*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*

3. A joint proposed pretrial order shall be lodged within thirty (30) days from the date of this Order. The Court shall set a pretrial conference upon receipt of the joint proposed pretrial order. The attorney responsible for trial shall appear and participate in the pretrial conference. At the conference, the Court will set deadlines for filing and disposing of the following matters: proposed voir dire, jury instructions, trial memorandum, deposition testimony to be used at trial, and motions in limine. No trial date is set at this time.

Dated this 26th day of March, 2019.

_____
Bernardo P. Velasco
United States Magistrate Judge