**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Williams, | No. CV-17-00029-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Erika Campas, et al., | |
| Defendants. | |

Currently pending before the Court is Plaintiff's Motion for Attorney's Fees and Nontaxable Costs ("Fee Motion") (Doc. 327) and Defendant Campas's Motion for Cost Sanction Under Rule 68 (Doc. 324). The Court previously held a status conference and referred this matter for a settlement conference in an effort to provide the parties the opportunity for resolution. *See* Minute Entry 4/5/2024 (Doc. 347); Order 5/3/2024 (Doc. 348). The Honorable Lynnette C. Kimmins set a settlement conference for August 26, 2024. Order 5/20/2024 (Doc. 349). Before the parties were able to attend, Plaintiff's counsel reached a point at which he could no longer effectively represent Ms. Williams. *See* Mot. to Withdraw (Doc. 351). The Court has granted counsel's request to withdraw and vacated the settlement conference. As such, the motions are ripe for review.

## I.     BACKGROUND

This case was originally filed in Pima County Superior Court on December 16, 2016. *See* Not. of Removal (Doc. 1). The original complaint alleged claims against Levi Khan, Rosette Codner, Erika Campas, Gary Rosebeck, James Davis, and the City of

Tucson.  *See* Compl. (Doc. 1-3).  It alleged four (4) grounds for relief under 42 U.S.C. § 1983, including 1) a Fourth Amendment violation against Defendants Campas, Rosebeck, and Davis for illegal search and seizure; 2) a Fourth Amendment violation against the Arizona Department of Child Safety ("DCS"), the City of Tucson, and/or the State of Arizona for their policy regarding warrantless searches; 3) a Due Process violation against Khan for inappropriate contact with Plaintiff; and 4) a conspiracy by Codner, Campas, Rosebeck, and Davis to violate Plaintiff's civil rights.[1]  *Id.*  At the time this matter was initiated in the state court, Plaintiff already had another case pending against Levi Khan, DCS caseworker Rosette Codner, Director of DCS Gregory McKay, and the State of Arizona.  *See Williams v. Khan, et al.*, Docket Sheet, Case No. C20160317 (Pima Cnty. Super. Ct.), *available at* Defs. Rosebeck and Davis's Response to Pl.'s Mot. for Attorneys' Fees (Doc. 338), Ex. "A."  Stephen Weeks of the Weeks Law Firm, PLLC and Patrick E. Broom and Adam Pelz of the Russo Law Firm represented Plaintiff in this unrelated case. *See* Compl. & Not. of Appearance, *Williams v. Khan, et al.*, Docket Sheet, Case No. C20160317 (Pima Cnty. Super. Ct.), *available at* Defs. Rosebeck and Davis's Response to Pl.'s Mot. for Attorneys' Fees (Doc. 338), Exs. "B" & "C."

On January 18, 2017, Defendants City of Tucson, Rosebeck, and Davis removed this matter to federal court.  Not. of Removal (Doc. 1).  On February 27, 2017, Defendant Codner and Count 4 (conspiracy) were dismissed pursuant to stipulation.   Order 2/27/2017 (Doc. 10).   On June 1, 2017, Patrick Broom and Adam Pelz withdrew as counsel of record.   Order 6/1/2017 (Doc. 16).   On June 30, 2017, Stephen Weeks withdrew as counsel of record.  Order 6/30/2017 (Doc. 26).  At this point, Plaintiff was *pro se*.  On November 15, 2017, Plaintiff filed a *pro se* motion to extend deadlines and for leave for attorney Michael Moore to appear as trial counsel.  Mot. to Extend (Doc. 31); Moore Decl. 11/15/2017 (Doc. 32).  On December 12, 2017, Michael Moore entered his appearance in this case.  Not. of Appearance (Doc. 36).

---

[1] Neither DCS nor the State of Arizona are named defendants in the original complaint (Doc. 1-3).

On February 1, 2018, Plaintiff sought to amend her complaint. Mot. to Amend (Doc. 51). Plaintiff's proposed amendment deleted Count 3 (due process violation against Khan) and replaced it with a new claim against Defendant Campas alleging a violation of the First and Fourteenth Amendments' right of familial association. Proposed FAC (Doc. 51-1). On February 9, 2018, Michael Moore entered his appearance in the unrelated, pending state case. *See Williams v. Khan, et al.*, Docket Sheet, Case No. C20160317 (Pima Cnty. Super. Ct.), *available at* Defs. Rosebeck and Davis's Response to Pl.'s Mot. for Attorneys' Fees (Doc. 338), Ex. "A." On May 16, 2018, the Court granted Plaintiff leave to file her First Amended Complaint ("FAC"). Order 5/16/2018 (Doc. 80). The following day, Plaintiff filed a stipulation to dismiss the City of Tucson and Count II (Fourth Amendment regarding policy) of the original complaint. Stip. to Dismiss (Doc. 81). On May 25, 2018, the Court entered its order of dismissal regarding the City and Count II. Order 5/25/2018 (Doc. 83). On May 30, 2018, Plaintiff filed her FAC against Defendants Campas, Rosebeck, and Davis, alleging the original Count 1 (illegal search and seizure) and the new Count II (familial association against Defendant Campas). On May 31, 2018, Michael Moore filed a stipulation for dismissal of the pending state court case against Khan following settlement. *See Williams v. Khan, et al.*, Docket Sheet, Case No. C20160317 (Pima Cnty. Super. Ct.), *available at* Defs. Rosebeck and Davis's Response to Pl.'s Mot. for Attorneys' Fees (Doc. 338), Ex. "A."

On March 26, 2019, the Court denied Defendants' motions for summary judgment, and because of Magistrate Judge Velasco's retirement the case was reassigned to the undersigned. Order 3/26/2019 (Doc. 140). On April 23, 2019, Defendant Campas filed an interlocutory appeal with the Ninth Circuit Court of Appeals and this matter was stayed. Not. of Interlocutory Appeal (Doc. 142); Order 6/21/2019 (Doc. 151). On September 4, 2019, following a limited remand from Defendant Campas's interlocutory appeal, this Court granted the parties' Joint Conditional Motion for Voluntary Dismissal of Family Separation Claim. Order 9/4/2019 (Doc. 156). The only remaining claim was the original Count One. The parties moved to dismiss the interlocutory appeal and began

preparing for trial.   Trial was set for March 30, 2020, but the COVID-19 pandemic disrupted the operations of the Court.

On March 31, 2021, the parties attended a settlement conference before the Honorable Jacqueline M. Rateau.   Minute Entry 3/31/2021 (Doc. 222).   The matter settled and the Court and all Defendants believed this case to be closed.   *See id.* Following the settlement conference, but prior to the filing of a stipulation to dismiss, Plaintiff's then counsel sought to withdraw as attorney of record.   *See* Appl. to Withdraw (Doc. 224);  Minute Entry 5/4/2021 (Doc. 229).   Defendants jointly filed an objection to the withdrawal (Doc. 226), as well as a motion to dismiss (Doc. 227) based upon the settlement before Judge Rateau.   A hearing was held regarding the withdrawal, and based upon the information received from Plaintiff's counsel Michael Moore, he was allowed to withdraw.   Minute Entry 5/4/2021 (Docs. 229, 231).   On May 25, 2021, a status conference was held regarding the settlement.   Minute Entry 5/25/2021 (Doc. 236). Plaintiff alleged that she felt coerced at the settlement conference and returned the proceeds to Defendants, after which the Court unwound the settlement agreement.   Order 5/26/2021 (Doc. 237).   This decision was upheld following reconsideration.   Order 7/2/2021 (Doc. 252).

On June 15, 2021, Defendant Campas and Defendants Rosebeck and Davis served offers of judgment on Plaintiff.   *See* Campas Not. of Service (Doc. 244); Davis/Rosebeck Not. of Service (Doc. 243).   Plaintiff did not respond to either offer.   Plaintiff continued to litigate this matter *pro se*, filing various motions.   The Court was ultimately able to obtain *pro bono* counsel to represent Ms. Williams.   Order 9/30/2022 (Doc. 287).   The case went to trial in February 2023.   *See* Minute Entry 2/13/2023 (Doc. 304).   The jury awarded Plaintiff $10,000.04 against Defendant Campas and $0 (adjusted to $1 nominal damages) against Defendants Rosebeck and Davis.   Jury Verdict (Doc. 320); Judgment (Doc. 323).

. . .

. . .

## II.     ATTORNEYS' FEES AND COSTS

Plaintiff seeks attorneys' fees and costs following a jury trial in which she obtained a favorable verdict.   Pl.'s Fee Mot. (Doc. 327).   The parties agreed that resolution of the attorneys' fees issue is necessary prior to determining whether cost sanctions are appropriate.[2]  *See* Pl.'s Response to Mot. for Cost Sanction (Doc. 330) at 3; Defs.' Reply to Mot. for Cost Sanction (Doc. 335).   Plaintiff's motion for fees seeks attorneys' fees and nontaxable costs of $234,308.18.   Her attorneys' fees ($221,646.00) request is broken down as follows:

| | |
|---|---|
| Carden Livesay, Ltd: | $44,685.00 |
| Michael Moore: | $146,083.50 |
| Russo Law Firm: | $30,877.50 |

Plaintiff has submitted a bill of costs reflecting taxable costs in the amount of $4,309.71.  Of these, $2,223.20 are pre-offer costs incurred by Plaintiff's prior counsel Michael Moore.[3]  *See* Carden Decl. (Doc. 326) at ¶ 13.  The remaining costs of $2,086.51 include $480.00 for a process server for trial subpoenas, $127.20 for a transcript of Defendant Rosebeck's trial testimony, $430.05 in trial witness fees, $72.88 for copies related to trial, $71.20 for PACER fees, filing fees of $244.00 following removal, and $117.08 in service fees for the original defendants, $20.10 for state court docket fees prior to removal, and $524.00 for copies of records billed by previous counsel.  *Id.* at ¶¶ 10–13.

Plaintiff also seeks nontaxable costs of $10,438.98.[4]  *See* Pl.'s Mot. for Attorney's Fees and Nontaxable Costs (Doc. 327).   This amount includes pre-offer costs of $6,810.44 incurred by prior counsel Patrick Broom.  The post-offer costs include $900.20

---

[2] The Court realizes that "agreed" might be too strong; however, Defendant Campas did not object to Plaintiff's procedural approach.

[3] Pre-offer refers to the time prior to Defendants' June 15, 2021, service of offers of judgment on Plaintiff.

[4] Plaintiff states the total non-taxable costs sought is $12,662.18; however, the Court's calculation totals $10,438.98 ($900.20 + $6,810.44 + 2,728.34).

incurred by Mr. Carden during trial and $2,728.34 for a computer that Plaintiff purchased in November 2021.

### A.   Entitlement to Attorneys' Fees

"Title 42 U.S.C. § 1988 provides that in federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983). Civil rights actions include those brought pursuant to 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1988(b).  "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."  *Hensley*, 461 U.S. at 429 (citing H.R. Rep. No. 94-1558, p. 1 (1976)).  "[P]laintiffs may be considered 'prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Id.* at 433 (quotation marks and citation omitted).  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."  *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792–93 (1989).  "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).  "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."  *Id.* at 113.

Here, Plaintiff obtained a favorable jury verdict against all Defendants.  Although the awards as to Defendants Rosebeck and Davis were nominal, they were sufficient to alter the legal relationship between Plaintiff and Defendants.  As such, the Court finds that Plaintiff was a prevailing party as required by § 1988; however, the Court's analysis does not end here.  *Farrar*, 506 U.S. at 114 (the magnitude of success does not affect plaintiff's eligibility for attorneys' fees as a prevailing party, but does bear on the propriety of fees awarded).

**B.   *Amount of Reasonable Fees***

**1.  Legal Standard**

A "court's 'central' responsibility [is] to 'make the assessment of what [] a reasonable fee [is] under the circumstances of the case.'" *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quoting *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).   After analyzing the circumstances, a court may award a full fee, a reduced fee, or no fee at all.  *Id.*   Indeed, the Supreme Court of the United States has admonished "that fee awards under § 1988 were never intended to produce windfalls to attorneys[.]"  *Id.* (quotations and citations omitted).  "A prevailing plaintiff[, however,] 'should ordinarily recover an attorney's fee unless circumstances would render such an award unjust.'"  *Hensley v. Eckerhart*, 461 U.S., 424, 429 (1983) (citations omitted).  "The amount of the fee, of course, must be determined on the facts of each case."  *Id.*   The Ninth Circuit has instructed that "[i]n applying the 'special circumstances' exception, we focus on two factors: (1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees."  *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005) (quotations and citations omitted).

With these instructions in mind, the "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  The Ninth Circuit uses the two-step "lodestar method" for the calculation of attorneys' fees.  *Edmo v. Corizon*, Inc. 97 F.4th 1165, 1168 (9th Cir. 2024) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)).  A "reasonable hourly rate" as one "based on evidence of the market rate for the services provided."  *Id.*  "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."  *Moreno v. City of Sacramento*, 524 F.3d 1106, 1111 (9th Cir. 2008).  This lodestar is treated as a presumptively reasonable award.  *Edmo*, 97 F.4th at 1168.  In step two, however, courts may adjust the fee award upward

or downward after consideration of the *Kerr* factors.[5]  *Moreno*, 524 F.3d at 1111. Plaintiff bears the burden to "submit evidence supporting the hours worked and rates claimed[,] [and] [w]here the documentation of hours is inadequate the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

### 2.  Carden Livesay Ltd.

Plaintiff seeks fees in the amount of $44,685.00 for trial counsel.  *See* Pl.'s Fee Mot. (Doc. 327).  Trial counsel submitted billing records reflecting 93.3 hours of his time at a rate of $450.00 per hour and 21.6 hours of paralegal time at a rate of $125.00 per hour.  *Id.*, Carden Livesay, Ltd. Billing Recs. (Exh. "A") (Doc. 327-1).  The Supreme Court has observed that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."  *Blanchard v. Bergeron*, 489 U.S. 87, 94–95 (1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 894 (1984)); *see also Leeds v. Watson*, 630 F.2d 674, 677 (9th Cir. 1980) (finding plaintiffs' counsel's status as a legal services organization irrelevant to the determination of the propriety of a fees award).  Furthermore, as Plaintiff properly notes, the Court's *pro bono* program recognizes appointed counsel's right to seek attorneys' fees and costs for prevailing in an appropriate civil case.  D. Ariz. *Pro Bono* Opportunities for Lawyers, *available at* https://www.azd.uscourts.gov/sites/azd/files/DAZ%20Notice%20of%20Pro%20Bono%20Opportunities.pdf ("Litigation of a case through the civil litigation panel does not preclude counsel from seeking attorneys'

---

[5] The *Kerr* factors are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Edmo*, 97 F.4th at 1168 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

1  fees and costs for prevailing in a fee-generating civil case."). As such, the Court finds

2  that Mr. Carden is not precluded from an award of fees, "calculated in the usual way."[6]

3  *Blanchard*, 489 U.S. at 95.

### a. Customary Fee

5  Mr. Joshua Carden was the attorney appointed by this Court to represent Plaintiff

6  on a limited basis through trial. Order 9/30/2022 (Doc. 287). He has practiced law in

7  Arizona for twenty-two (22) years and litigated numerous federal court cases, including

8  six (6) which he tried as solo or lead counsel. Carden Decl. (Doc. 327-1) at ¶¶ 2–9. Mr.

9  Carden seeks a rate of $450.00 per hour, the rate that he currently charges hourly clients.

10 *Id.* at ¶¶ 18–19. Defendants object to this rate and urge that Mr. Carden should receive

11 $350.00 per hour, "which is a reasonable hourly rate in Tucson, Arizona, the district this

12 Courts sits in." Defs. Rosebeck & Davis's Resp. to Pl.'s Fee Mot. (Doc. 338) at 17; *see*

13 *also* Def. Campas's Joinder (Doc. 339). In support of this position, Defendants submitted

14 an affidavit from Mr. Daryl Audilett, a Tucson attorney, opining that $350.00 per hour is

15 a reasonable rate. Defs.' Rosebeck and Davis's Resp. to Pl.'s Fee Mot. (Doc. 338),

16 Audilett Decl. (Exh. "G") (Doc. 338-1).

17 "Generally, when determining a reasonable hourly rate, the relevant community is

18 the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d

19 973, 979 (9th Cir. 2008) (citations omitted); *see also Gates v. Deukmejian*, 987 F.2d

20 1392, 1405 (9th Cir. 1992) (specifying that the forum district is the appropriate

21 community). Because the District of Arizona is a singular district, it encompasses both

22 Tucson and Phoenix. The relevant community, then, is Arizona. *See Ramos v.*

23 *Probuilds, LLC*, No. CV-23-01111-PHX-SMM (DMF), 2024 WL 1078078, at *6 (D.

24 Ariz. Feb. 26, 2024), *report and recommendation adopted by* 2024 WL 1071204 (D.

25 Ariz. Mar. 12, 2024). Mr. Carden avers that he has "collected fees from clients and

26 opposing parties based upon [his] previous rate of $400.00." Carden. Decl. (Doc. 327-1)

27

28  ───────────────

[6] This finding is unrelated to any determination regarding Mr. Carden's fee award vis-à-vis Defendant Campas's offer of judgment, which the Court will address below.

- 9 -

at ¶ 20 (citing *Lane v. Statesman*, No. CV2017-006304 (Maricopa Cnty. Sup. Ct. Mar. 25, 2020)).  He has not submitted, however, evidence showing recovery at the $450.00 hourly rate.  On the other hand, while the Court knows Mr. Audilett to be a respected civil defense attorney, he recognizes that plaintiffs' lawyers have other risks built into their hourly rate.  Defs. Rosebeck and Davis's Resp. to Pl.'s Fee Mot. (Doc. 338), Exh. "G" at ¶ 7.  Additionally, he addresses Mr. Moore and Mr. Carden's fees together in advocating that Plaintiff's prior counsel, Mr. Broom's rate is reasonable.  *Id.*  While using Mr. Broom's rate as a benchmark for Mr. Moore's fees may be proper, due to their nearly contemporaneous representation of Plaintiff, the Court finds it less helpful in assessing the reasonableness of Mr. Carden's fees, six (6) years later.  A review of more recent cases in this district where fees have been awarded fall in the range of $350.00 per hour to $450.00 per hour.  *See Ramos v. Probuilds, LLC*, No. CV-23-01111-PHX-SMM (DMF), 2024 WL 1078078, at *6 (D. Ariz. Feb. 26, 2024) (reviewing cases where fees were awarded to plaintiff's counsel in that case and finding $395 an appropriate rate), *report and recommendation adopted by* 2024 WL 1071204 (D. Ariz. Mar. 12, 2024); *Jimenez v. Terrific Tree Trimmer, LLC*, No. CV-22-01787-PHX-SPL, 2023 WL 4452077, at *2 (D. Ariz. July 11, 2023) (reviewing cases and awarding a rate of $350.00 per hour);  *Southwest Fair Housing Council v. WG Chandler Villas SH LLC*, No. CV-19-00178-TUC-RM, 2023 WL 4421579 (D. Ariz. July 10, 2023) (awarding lead attorney's fees at $350.00 per hour and paralegal fees at $125.00); *Southwest Fair Housing Council v. WG Scottsdale, LLC*, No. CV-19-00180-TUC-RM, 2022 WL 16715613, at *5 (D. Ariz. Nov. 4, 2022) (awarding lead attorney's fees at $350.00 per hour and paralegal fees at $125.00); *Dinsbach on behalf of Dinsbach v. Harris*, No. CV-18-03595-PHX-GMS, 2022 WL 742726, at *3 (D. Ariz. Mar. 11, 2022) (awarding lead counsel $450.00 per hour, but noting defendant did not object).  The Court finds that for Mr. Carden, a reasonable hourly rate of $400.00 per hour is appropriate.  The Court further finds that a paralegal rate of $125.00 is reasonable.

This reduces Mr. Carden's top line request from $44,685.00 to $40,020.00.

1    Additionally, Mr. Carden seeks compensation for 2.5 hours spent drafting Plaintiff's

2    Reply.[7]  (Doc. 344) at 9.  As such, the total fees sought for Carden Livesay, Ltd. is

3    $41,020.00.

### b.  Reasonable Hours

5         Having established a reasonable rate, the Court turns to consideration of whether

6    the hours expended by Plaintiff's trial counsel and his staff was reasonable.  It is

7    Plaintiff's burden to "submit evidence supporting the hours worked and rates claimed[,]

8    [and] [w]here the documentation of hours is inadequate the district court may reduce the

9    award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "The number of

10   hours to be compensated is calculated by considering whether, in light of the

11   circumstances, the time could reasonably have been billed to a private client."  *Moreno v.*

12   *City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  "In the private sector, 'billing

13   judgment' is an important component in fee setting[,] [i]t is no less important here."

14   *Hensley*, 461 U.S. at 434.

15        Mr. Carden has provided the Court with billing records reflecting the time he

16   expended, as well as that of his paralegal, in litigating this matter.  Pl.'s Fee Mot. (Doc.

17   327), Exh. "A" (Doc. 327-1).  Defendants object to Mr. Carden's January 27, 2023, entry

18   of 5.20 hours for "Research addresses for subpoenas issued to Lo Baido, Gaare, Denzler,

19   Jiminez, Machiche, Hassey, Arevallos, Williams (Scott); send to process server Ron

20   Ezell."  *Id.*  Defendants assert that "[t]his is a purely clerical task  and 'it is not reasonable

21   to charge an experienced attorney rate for clerical tasks and the Court [should] preclude

22   those tasks from reimbursement."  Defs. Rosebeck and Davis's Resp. to Pl.'s Fee Mot.

23   (Doc. 338) at 20 (quoting *Bodine v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00721-

24   PHX-DWL, 2023 WL 243966, at *2 (D. Ariz. Jan. 18, 2023)) (2d alteration in original).

25   Mr. Carden explained that "no Defendant disclosed the addresses for witnesses whom

27   ────────────────

28        [7] "In statutory fee cases, federal courts . . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."  *Camacho v. Bridgeport Fin., Inc.*, 523 U.S. 973, 981 (9th Cir. 2008) (quoting *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–660 (9th Cir. 1985)).

their counsel announced shortly before trial were no longer able to be produced by Defendants[,] and [t]he identities of each witness had to be determined based on their prior work history, public record checks, assessor records, and a judgment call ultimately had to be made as to which possible addresses for the trial witnesses should be used for service – a judgment call that no paralegal would be able to make."  Reply (Doc. 344) at 8–9.  Mr. Carden further observed that this task was not administrative and "was made necessary because Defendants utilized counsel's addresses in disclosures for nearly all witnesses until shortly before trial."  *Id.* at 9.

In districts, such as this one, skilled paralegal work may be billed the market rates. *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989).  "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, [however,] regardless of who performs them."  *Id.* at 288 n.10.  "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available[,] [s]uch non-legal work may command a lesser rate[,] [but] [i]ts dollar value is not enhanced just because a lawyer does it."  *Id.* (quoting *Johnson v. Georgia Highway Express, Inc.*, 4488 F.2d 714, 717 (5th Cir. 1974)).  While the Court appreciates Defendants' frustration at this matter going to trial in the first instance, Mr. Carden's appointment was made in an attempt to decrease the temperature of the litigation.  Defendants cannot now complain about work that Mr. Carden was required to perform arising from a lack of cooperation.  That said, the Court finds that 5.2 attorney hours is excessive.  The Court will allow four (4) hours at Mr. Carden's paralegal rate of $125.00 per hour and 1.2 hours at $400.00 per hour.  This reduces the January 27, 2023, entry from $2,340.00 to $980.00.  The Court will strike the December 21, 2022, entry for "prepar[ing] and send[ing] copies of new witness and exhibit lists to opposing counsel." Pl.'s Fee Mot. (Doc. 327), Exh. "A" (Doc. 327-1) at 7.  This entry does not suggest that the lists were drafted, but rather copied and mailed, which is not legal work.  The Court will also strike the February 1, 2023, entry reflecting "[r]eview courtroom change email;

1    update process server." *Id.* at 8.  Both of these are administrative tasks, and therefore not

2    compensable.  *See Jimenez v. Terrific Tree Trimmer, LLC*, No. CV-22-01787-PHX-SPL,

3    2023 WL 4452077, at *2 (D. Ariz. July 11, 2023).  These entries total 0.5 hours at the

4    rate of $400.00 per hour.  Therefore, the Court will reduce the fee award by $200.00.

5         The Court has reviewed the itemization of fees for vagueness, unnecessary internal

6    conference, duplicative entries, and improper block billing.  No other non-compensable

7    entrees were found.  With the reduction in the hourly rate and subtraction of non-

8    compensable items, the Mr. Carden's fees total $39,460.00.

9                              **c.  Adjustment to lodestar**

10        Defendants Rosebeck and Davis argue for a reduction in the "lodestar fee

11   calculation by no less than two-thirds to account for the nominal damages award" against

12   each of them.  Defs. Rosebeck and Davis's Resp. to Pl.'s Fee Mot. (Doc. 338) at 21.

13   Defendants assert that such a drastic reduction is warranted because 1) Plaintiff sought an

14   award of nearly $450,000.00 in compensatory damages, but only received $10,000.04

15   against Defendant Campas and nominal damages against Defendants Rosebeck and

16   Davis; 2) counsel should not receive a "windfall"; 3) if Plaintiff had represented herself at

17   trial, she would not be entitled to fees; and 4) Plaintiff rejected a $40,000.00 settlement

18   and elected to go to trial, but was only rewarded a fraction of the settlement amount by

19   the jury.  *Id.* at 21–23.

20        "[I]n rare cases, a district court may make upward or downward adjustments to the

21   presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen*

22   *Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), . . . that have not been deemed

23   subsumed in the lodestar calculation."  *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th

24   Cir. 1992) (citations omitted).  In making this assessment, the Court considers the

25   preclusion of other employment by an attorney due to acceptance of the case; time

26   limitations imposed by a client or the circumstances; the amount in question and the

27   results obtained; the experience, reputation and ability of the attorneys; the

28   "undesirability of the case; the nature and length of the professional relationship with the

client; and awards in similar cases.  *See Kerr*, 526 F.2d at 70; *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *Camacho v. Bridgeport Fin., Inc.* 523 F.3d 973, 982 n.1 (9th Cir. 2008); LRCiv. 54.2(c)(3).

Because of this case's unusual procedural posture, the Court will consider Mr. Carden's fees separately from previous counsel, Mr. Moore and the Russo Law Firm. Mr. Carden was appointed for the limited purpose of taking this case through trial after the Court allowed Plaintiff to unwind the settlement.  Order 9/30/2022 (Doc. 287); *see also* Minute Entry 8/12/2022; Order 5/26/2021 (Doc. 237).  As such, some of the issues that weigh against Mr. Moore and the Russo Law Firm's fee requests, do not exist for Mr. Carden.  Mr. Carden was given this case "as is," meaning discovery was closed and there was little opportunity for case development or other litigation.  He had a limited timeframe to enter the case, review the file, understand the demands of his client, the Court, and opposing counsel, and prepare for trial.  As will be discussed below, "Plaintiff did not obtain an excellent result in this case because most of the counts in [her] complaint were dismissed[.]"  *Dinsbach on behalf of Dinsbach v. Harris*, No. CV-18-03595-PHX-GMS*, 2022 WL 742726, at * 9 (D. Ariz. Mar. 11, 2022).  At the point at which Mr. Carden entered the case, however, there was only a single issue remaining for trial.  His representation was necessary because Plaintiff was unable to obtain counsel on her own.  Thus, Mr. Carden was given an undesirable case, and yet managed to obtain a favorable verdict for his client.  If Plaintiff were able to demonstrate that she had incurred attorneys' fees and costs prior to June 15, 2021, the date on which Defendants served their Offers of Judgment, in excess of $9,996.00 as to Defendant Campas and $19,999.00 as Defendants Rosebeck and Davis, she would be entitled to attorney's fees for Mr. Carden in the amount of $39,460.00 without reduction.

### d.  Costs

Regarding taxable costs incurred by Mr. Carden for trial, Plaintiff seeks $480.00 for a process server for trial subpoenas, $127.20 for a transcript of Defendant Rosebeck's trial testimony, $430.05 in trial witness fees, $72.88 for copies related to trial, and $71.20

for PACER fees.[8]  Carden Decl. (Doc. 326) at ¶¶ 10–13.  Plaintiff also seeks nontaxable costs of $900.20, which were incurred by Mr. Carden during trial.  *See* Pl.'s Mot. for Attorney's Fees and Nontaxable Costs (Doc. 327).

Defendants object to costs related to witnesses that were not called to testify or were otherwise excluded from testifying at trial, as well as Pacer fees and copy charges related to trial.  *See* Def. Rosebeck and Davis's Response (Doc. 338) at 23–24; Def. Campas's Joinder (Doc. 339) at 5–7.  In Plaintiff's reply, Mr. Carden explains the necessity for the costs he incurred related to trial.  The Court finds his explanation properly justifies the costs incurred by Carden Livesay, Ltd. only.  If Plaintiff were able to demonstrate that she had incurred attorneys' fees and costs prior to June 15, 2021, the date on which Defendants served their Offers of Judgment, in excess of $9,996.00 as to Defendant Campas and $19,999.00 as Defendants Rosebeck and Davis, she would be entitled to the taxable and nontaxable costs requested by Mr. Carden in the amount of $2,081.53.

### e.  Conclusion

Carden Livesay, Ltd. provided excellent legal services to Plaintiff.  Mr. Carden was a skilled litigator, especially considering he was tasked with stepping into a messy case on the eve of trial.  As will be discussed, *infra*, however, Plaintiff cannot meet her burden to show that she incurred sufficient fees and costs prior to Defendants service of their respective Offers of Judgment to overcome sanctions pursuant to Rule 68, Federal Rule of Civil Procedure.

### 3.  **Prior Counsel Michael Moore**

Plaintiff seeks fees of $146,083.50 for her prior counsel Michael Moore.  *See* Pl.'s Fee Mot. (Doc. 327).  Mr. Moore has submitted an affidavit and billing records reflecting his purported time, as well as that of his paralegal.  Mr. Moore seeks an hourly rate of $580.00 per hour for himself and $100.00 per hour for his paralegal.

"[F]ee awards under § 1988 were never intended to 'produce windfalls to

---

[8] These total $1,181.33 expended by Mr. Carden on Plaintiff's behalf.

attorneys[.]'" *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (quoting *Riverside v. Rivera*, 477 U.S. 561, 580 (1986)). "[E]ven the prevailing plaintiff may be denied fees if 'special circumstances would render [the] award unjust.'" *Id.* at 118 (Connor, J., concurring) (2d alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

Here, Mr. Moore unequivocally stated on the record that he was not taking a fee in this case. Hr'g Tr. 5/4/2021 (Doc. 240) at 4:16–5:2. Plaintiff attempts to characterize Defendants' position that Mr. Moore is not entitled to a fee because he "waived" it as "misdirection." Pl.'s Reply (Doc. 344) at 7. Plaintiff's claim is without merit. Mr. Moore negotiated a settlement on Plaintiff's behalf and in doing so waived his fees. *See Evans v. Jeff D.*, 475 U.S. 717, 730 (1986) (observing that "while it is undoubtedly true that Congress expected fee shifting to attract competent counsel to represent citizens deprived of their civil rights, it neither bestowed fee awards upon attorneys nor rendered them nonwaivable or nonnegotiable[.]"). Mr. Moore was clear about his decision not to take a fee in this case. After Mr. Moore's withdrawal, Plaintiff litigated this matter *pro se*. As a *pro se* litigant, she sought to unwind the settlement over the strenuous objections of Defendants. While the Court moved toward setting the matter for trial, Plaintiff was unable to obtain new counsel. As a result, the Court located *pro bono* counsel and appointed him for the limited purpose of representing Plaintiff through trial. Plaintiff cannot now attempt to undo Mr. Moore's waiver, simply because her *pro bono* attorney was able to obtain a favorable result at trial and she is faced with cost sanctions pursuant to Rule 68, Federal Rules of Civil Procedure.

Plaintiff was adamant that she did not want to settle this case and chose to go to trial. Mr. Moore had waived his fee and exited the case. As Defendants point out, they "reasonably and justifiably relied on Moore's statements on the record before the Court [that he had waived his fees], which prompted their subsequent discussion of and filing of their Offers of Judgment." Def. Campas's Joinder (Doc. 339) at 5. The Court agrees with Defendants. *See Marek v. Chesny*, 473 U.S. 1, 7 (1985) (quotations and citations omitted) ("[M]any a defendant would be unwilling to make a binding settlement offer on

1    terms that left it exposed to liability for attorney's fees in whatever amount the court

2    might fix on motion of the plaintiff."). Based upon the unique circumstances of this case,

3    the Court finds that "even before calculating a lodestar or wading through all the

4    reasonableness factors, it is clear that the reasonable fee is no fee at all." *Farrar*, 506

5    U.S. at 118 (Connor, J., concurring). Accordingly, the Court will not award fees to

6    Plaintiff based on Mr. Moore's representation.

7                    **4.  Prior Counsel Russo Law Firm**

8                        **a.  Reasonable Fee**

9        Plaintiff seeks fees of $30,877.50 for her prior counsel at the Russo Law Firm,

10   Patrick Broom. *See* Pl.'s Fee Mot. (Doc. 327). Mr. Broom has submitted an affidavit

11   and billing records reflecting the time he billed, as well as that of his associate and

12   paralegal. Mr. Broom seeks an hourly rate of $350.00 per hour for himself, $250.00 per

13   hour for his associate, and $125.00 per hour for his paralegal. Defendants do not object

14   to these rates. Accordingly, the Court finds the rates charged by the Russo Law Firm

15   reasonable.

16                       **b.  Reasonable Hours**

17       Having established a reasonable rate, the Court turns to consideration of whether

18   the hours expended by Plaintiff's trial counsel and his staff was reasonable. The Russo

19   Law Firm's billing records present many challenges in assessing what is reasonable. As

20   Defendants explain, billed hours regarding "state-law claims against wholly unrelated

21   defendants regarding acts that occurred *after* the Defendants entered Plaintiff's home in

22   December 2014" should be excluded. Def. Campas's Joinder (Doc. 339) at 4. Plaintiff

23   acknowledges that "it would appear that the Declaration of Patrick Broom does include

24   some work on the state court prior lawsuit, **in addition** to his firm's work on this one."

25   Pl's Reply (Doc. 344) at 5 (emphasis in original). Trial counsel further indicates that he

26   "certainly wishes that [the billing records] could have been split out better." *Id.* So, does

27   this Court.

28       Under the Local Rules, the party seeking fees must submit an "itemized account of

- 17 -

the expended" that details "[t]he time devoted to **each individual unrelated task performed**[.]" LRCiv 52.4(e)(1)(B) (emphasis added).  "A billing entry that corresponds to work performed on several unrelated tasks does not aid the Court in its evaluation of whether the time performed on each specific task could have been reasonably billed to a private client."  Furthermore, the Local Rules require the party seeking an award of fees to "adequately describe the services rendered so that the reasonableness of the charge can be evaluated."  LRCiv 52.4(e)(2).  The Rule demands that the moving party "furnish an adequate nonprivileged description of the services in question[,]" and states that telephone conferences "must identify all participants and the reason for the call"; legal research "must identify the specific legal issues researched and . . . should identify the pleading or document the preparation of which occasioned the conduct of the research"; and the preparation of pleadings or other pleadings "must identify the pleading, paper or other document prepared and the activities associated with its preparation."  LRCiv 54.2(e)(2)(A)–(C).  "if the time descriptions are incomplete, or if such descriptions fail to adequately describe the service rendered, the court may reduce the award accordingly."  LRCiv. 54.2(e)(2).  Additionally, as noted *supra*, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."  *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

Mr. Broom seeks $13,615.00 in fees at $350.00 per hour.[9]  Mr. Broom's billing entries, however, are replete with block billing entries and vague descriptions.  The Court declines to award fees for those entries that fail to comply with the Local Rules and will strike them accordingly.[10]   After reduction, the Court finds Mr. Broom properly accounted for 8.4 hours, totaling $2,940.00.

---

[9] The Court calculates this to be a request for 38.9 hours.

[10]  The stricken entries include: 7/28/2015 (1.5), 7/28/2015 (1.1), 8/17/2015 (0.8), 9/29/2015 (1.2), 11/6/2015 (0.5), 10/20/2016 (1.0), 11/3/2016 (1.5), 11/20/2016 (8), 1/4/2017 (1.0), 1/30/2017 (1.2), 2/1/2017 (0.7), 3/27/2017 (2.0), 4/5/2017 (1.0), 5/9/2017 (4.0), 5/17/2017 (5.0).

Mr. Pelz billed $6,975.00 at $250.00 per hour.[11]  The Court will strike two entries because they are blocked billed.[12]  The Court will also strike several of Mr. Pelz's entries for vagueness.[13]  Additionally, the Court will strike Mr. Pelz's April 14, 2015, entry of 1.2 hours.  "It is not 'necessarily unreasonable' for multiple timekeepers to request fees for the same task, but fee requests must not be duplicative or reflect an excessive amount of time spent on a task."  *Southwest Fair Housing Council v. WG Chandler Villas SH LLC*, No. CV-19-00178-TUC-RM, 2023 WL 4421579 (D. Ariz. July 10, 2023) (quotations and citations omitted).  This entry was billed by Mr. Broom and Mr. Pelz's description does not provide adequate information to support a finding that his time was reasonable.  Finally, the Court will strike the September 14, 2015, entry for 0.3 hours, because it reflects a task that is administrative or clerical in nature—"Emails with Nemuel Cruz regarding converting audio file from Monica McKenna interview."  This entry should not have been billed to the client.  After these reductions, Mr. Pelz's time equaled 18 hours at $250.00 per hour, totaling $4,500.00.

Ms. Federico billed for $10,287.50 at $125.00 per hour.[14]  Ms. Federico's timekeeping was almost entirely block billed with vague statements and administrative tasks.  Upon review, the Court found few entries that were compliant with the Local Rules and drafted in a way that the Court could assess reasonableness.  As a result, it is easier to list the entries that the Court will keep.  These are: 5/15/2015 (0.4), 6/24/2015 (0.2), 7/23/2015 (0.2), 12/7/2016 (0.3), 12/19/2016 (0.2), 1/27/2017 (0.2), 3/29/2017 (0.2), and 5/15/2017 (3.5).  This totals $650.00 in properly billed hours (5.2 hours at $125.00 per hour).

The total fees sought by the Russo Law Firm, after billing reductions, is $8,090.00.

---

[11] The Court calculates this to represent 27.9 hours.

[12] Mr. Pelz's block billed entries are 3/5/2015 (0.6) and 1/30/2017 (0.6).

[13] These entries include: 7/22/2015 (0.4), 7/22/2015 (0.3), 9/29/2015 (1.0), 9/29/2015 (0.5), 2/25/2016 (0.4), 10/4/2016 (0.4), 11/20/2016 (3.5).

[14] The Court calculates this to represent 82.3 hours.

### c.  Adjustment to lodestar

As discussed, *supra*, "in rare cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), . . . that have not been deemed subsumed in the lodestar calculation." *Gates v. Deukmejian*, 987 F.2d 1392, 1402 (9th Cir. 1992) (citations omitted).  In making this assessment, the Court considers the preclusion of other employment by an attorney due to acceptance of the case; time limitations imposed by a client or the circumstances; the amount in question and the results obtained; the experience, reputation and ability of the attorneys; the "undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases.  *See Kerr*, 526 F.2d at 70; *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *Camacho v. Bridgeport Fin., Inc.* 523 F.3d 973, 982 n.1 (9th Cir. 2008); LRCiv. 54.2(c)(3).

"'[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees' under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).  At step one, the Court considers whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434; *see also Webb*, 330 F.3d at 1168.  "Claims are 'unrelated' if they are 'entirely distinct and separate' from the claims on which the plaintiff prevailed." *Webb*, 330 F.3d at 1168 (quotations and citations omitted).  "[T]he focus is on whether the claims arose out of a common course of conduct[,] . . . claims may be related if either the facts *or* the legal theories are the same." *Id.* at 1169.  The second step involves consideration of whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434; *see also Webb*, 330 F.3d at 1168.  "Under *Hensley's* second step, a fee award 'must be adjusted downward where the plaintiff has obtained limited success on [her] pleaded claims, and the result does not confer a meaningful public benefit.'" *Dinsbach on behalf*

*of Dinsbach v. Harris*, No. CV-18-03595-PHX-GMS, 2022 WL 742726, at *9 (D. Ariz. Mar. 11, 2022) (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009).

Regarding step one, Plaintiff did not present evidence in either her motion or affidavits to demonstrate how the claims brought in the initial complaint regarding Khan were "related" to the other claims.  As Defendant Campas explained, the allegations against him were related to his alleged assault and battery of Plaintiff, which occurred *after* Defendants in this case entered Plaintiff's home.  The billing records and other evidence make it impossible for the Court to properly assess the extent to which these claims were actually intertwined.

The Court has more clarity with regard to step two.  Plaintiff initially sued six (6) defendants (including Khan), but only prevailed against one: Defendant Campas.[15] Furthermore, the jury only awarded $10,000.04 against Defendant Campas.  Jury Verdict (Doc. 320); Judgment (Doc. 323).  "A discretionary reduction to reflect that kind of limited success is appropriate."  *Webb*, 330 F.3d at 1170.  Most of the counts or parties were voluntarily dismissed, leaving the single count against the three (3) Defendants that went to trial.  Furthermore, "the Court is [not] aware of any meaningful public benefit that arose from Plaintiff's action that warrants an award of a full fee."  *Dinsbach*, 2022 WL 742726, at *9.  "While it is true that every § 1983 damages award acts as a deterrent against misconduct to a certain degree, Plaintiff has not shown that [her] claim resulted in any changes in policy or practice that make future rights violations of similar nature less likely."  *Id.* (citing *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001).  Additionally, it is unknown by this Court whether the Russo Law Firm received any settlement proceeds that require an offset here.  Based upon the shortcomings in Plaintiff's evidence and the very limited success, the Court will award Plaintiff 1/6 of the fees sought by the

---

[15] Technically, Plaintiff prevailed against Defendants Rosebeck and Davis, but only for nominal damages of $1 each.

1  Russo Law Firm which equals $1,348.33.[16]

2      The Court is mindful of the importance and cost of litigating a § 1983 civil rights

3  case to verdict, and the critical role § 1988 fee-shifting provisions play in attracting

4  competent counsel.  Plaintiff, however, insisted upon unwinding a settlement agreement

5  that dwarfed the award that she received at trial.  In the course of this litigation, Plaintiff

6  used the legal system as a weapon, placing a burden on the Defendants and this Court.

7  This, coupled with her failure to demonstrate that the fees sought are reasonable, make

8  such a drastic reduction appropriate.

9      *C.*     *Costs*[17]

10      **1. Moore Costs**

11      Plaintiff seeks Mr. Moore's costs in the amount of $2,223.20.  The Court is aware

12  that Mr. Moore received money for costs from another settlement.  *See* Minute Entry

13  5/4/2021 (Docs. 229, 231).  There is no mention of this recovery in Mr. Moore's affidavit

14  or elsewhere in Plaintiff's fee application.  Defendants are entitled to an offset of costs to

15  the extent that the litigation expenses have already been reimbursed.  *Bravo v. City of*

16  *Santa Maria*, 810 F.3d 659, 667 (9th Cir. 2016).  Because Plaintiff and Mr. Moore chose

17  to ignore any previous reimbursement, the Court cannot determine whether awarding

18  these costs would result in an unreasonable double recovery.  *See id.* at 668 ("[D]ouble

19  recovery of costs other than attorney fees is just as impermissible as double recovery of

20  attorney fees.").  The Court finds that Plaintiff has failed to meet her burden to

21  demonstrate entitlement to costs incurred during Mr. Moore's representation.

22      **2. Russo Law Firm Costs**

23      The Russo Law Firm seeks $7,715.62 in costs.  *See* Broom Decl. (Doc 327-1) at ¶

24  5 & Exh. "B."  The Russo Law Firm, however, did not provide a copy of their fee

25  agreement or provide any details regarding the same in Mr. Broom's affidavit.  *See*

---

26
27  [16] This reflects $490.00 for Mr. Broom, $750.00 for Mr. Pelz, and $108.33 for Ms. Federico.

28  [17] The Court reviewed *pro bono* trial counsel's cost request separately.  *See* Section II.B.2.d., *supra*.

- 22 -

LRCiv 54.2(d)(2).  Without this information, the Court cannot adequately assess whether the fees requested are reasonable or appropriate.[18]  Furthermore, the descriptions of the expenses are vague and counsel did not attach "copies of applicable invoices, receipts, and/or disbursement instruments."  LRCiv 54.2(e)(3).  Because the Court cannot verify or adequately analyze the Russo Law Firm's requested costs, they will be denied.

### 3. Plaintiff's Personal Computer

Plaintiff seeks costs related to the purchase of a personal computer in the amount of $2,728.34.   Williams Decl. (Doc. 327-2).   Plaintiff asserts that "[w]hile I was representing myself, I realized that I would not be able to comply with court orders, view documents on Pacer, or make filings needed in this lawsuit without a computer." Williams Decl. (Doc. 327-2) at ¶ 5.  Plaintiff further explained that "[t]o that end, I went to Best Buy on November 16, 2021 and bought myself a new computer set-up (a desktop which is cheaper than laptops) that I used thereafter for this lawsuit during my period of self-representation until Mr. Carden was appointed on September 30, 2022."  *Id.* at ¶ 6. Defendants object to this request.  *See* Defs. Rosebeck & Davis's Response (Doc. 338) at 9; Def. Campas's Joinder (Doc. 339) at 6.  In reply, Plaintiff suggests that this was done because her previous computer was seized by Defendants and alleges that she was "instructed" by opposing counsel and possibly the Court that she would need to file pleadings electronically.  Pl.'s Reply (Doc. 344).

Plaintiff's assertions are without merit.   On October 12, 2021, she filed a handwritten motion for reconsideration (Doc. 255) and then on October 29, 2021, she filed a lengthy, typewritten motion for summary judgment (Doc. 256).  On November 1, 2021, the Court denied the motion for reconsideration and struck the motion for summary judgment without mention of the need for a computer.  Order 11/1/2021 (Doc. 257).  The Court routinely accepts non-electronic filings from *pro se* litigants.  *See* Representing Yourself in Federal Court in the District of Arizona: A Handbook for Self-Represented

---

[18] For example, although postage may be considered overhead, if it was included in the fee agreement, a court could find it reasonable to award them.

Litigants at 15, *available at* https://publicapps.azd.uscourts.gov/prose-survey/. Furthermore, Plaintiff is barred from a collateral attack on her prior conviction through claims related to the execution of a legally valid search warrant. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). Plaintiff made a choice to buy a computer because she felt that it would be easier to litigate this case. That choice does not make it "a necessary personal cost incurred in prosecuting her claims." Pl.'s Reply (Doc. 344) at 10. Defendants are not responsible for this cost. As such, it is denied.

## III.   RULE 68 SANCTIONS

Defendant Campas has filed a Motion for Cost Sanction Under Rule 68 (Doc. 324). On June 15, 2021, Defendant Campas served Plaintiff with an Offer of Judgment for $20,000.00 pursuant to Rule 68. Def. Campas's Not. of Service (Doc. 244). "Because the jury verdict in Plaintiff's favor of $10,000.04 did not exceed the Offer of Judgment," Defendant Campas requests the Court award her costs in the amount of $3,870.95 which were incurred after June 15, 2021. Def. Campas's Mot. for Cost Sanctions (Doc. 324) at 2.

### A. *Legal Standard*

Rule 68, Federal Rules of Civil Procedure, allows a defendant(s) to serve on the plaintiff "an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If a plaintiff does not accept the offer and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree **must** pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d) (emphasis added). Thus, "[a] plaintiff that rejects a Rule 68 offer in excess of the judgment ultimately obtained at trial must bear its own and the defendant's post-offer costs." *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1026 (9th Cir. 2003) (citing *Haworth v. State of Nev.*, 56 F.3d 1048, 1052 (9th Cir. 1995)). "[T]he term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). This

- 24 -

means that a prevailing party who obtains a judgment less favorable than the unaccepted offer, cannot recover taxable or non-taxable post-offer costs.  *Early v. Keystone Restaurant Group, LLC*, 2024 WL 1886539 at *8 (E.D. Cal. Apr. 30, 2024); *See Haworth*, 56 F.3d at 1052.  Furthermore, "[t]he award [of a defendant's post-offer costs] is mandatory; Rule 68 leaves no room for the court's discretion."  *United States v. Trident Seafood Corp.*, 92 F.3d 855, 859 (9th Cir. 1996) (citation omitted).

### B. Validity of Offer

"The requirements for a valid Rule 68 offer are simple: 'An offer of judgment should . . . [be] served on the adverse party in the manner provided by [Fed. R. Civ. P.] 5(b) . . . The offer must specify a definite sum for which judgment may be entered, which plaintiff can either accept or reject.  It must be unconditional and must include 'costs then accrued.''"  *Harrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993) (quoting 12 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 3002 (1973)) (alterations in original).  Defendant Campas's Offer of Judgment states:

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant Campas hereby offers to allow judgment to be taken against her and in favor of Plaintiff Elizabeth Williams in the total amount of Twenty Thousand Dollars ($20,000.00).  The Offer of Judgment is inclusive of taxable costs.
>
> If the offer is accepted, Plaintiff waives any claim to a separate or additional award of attorney's fees, including attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 because she is a self-represented litigant and her former counsel stated on the record that he is not taking a fee in this case.
>
> This Offer of Judgment is made for the purposes specified in Rule 68 of the Federal Rules of Civil Procedure and is not to be construed as an admission of liability, nor is it an admission that Plaintiff has suffered any damages.
>
> The judgment shall be in full satisfaction of all federal and state law claims or rights that Plaintiff may have to damages, or any other form of relief, including injunctive relief, arising out of the alleged acts or omissions of Defendant Campas, in connection with the facts and circumstances that are the subject of this action.
>
> If this Offer of Judgment is not accepted in writing within thirty (30) days after service, it shall be deemed withdrawn.  In that event, evidence of

this Offer of Judgment is not admissible except in a proceeding to determine costs or the appropriate sanctions under Rule 68.  If the judgment that Plaintiff finally obtains is not more favorable than this Offer of Judgment, Plaintiff must pay all legally recoverable costs and expenses incurred by Defendant Campas after this Offer of Judgment was made.

Def. Campas's Rule 68 Offer of Judgment to Pl. Elizabeth Williams (Doc. 324-1).

On June 15, 2021, Defendant Campas served the Offer of Judgment on Ms. Williams via the CM/ECF system.  Def. Campas's Not. of Service at 2 (Doc. 244).  The offer specified a definite sum ($20,000.00) for which judgment could have been entered, and which Ms. Williams could have accepted.  Finally, the offer included that it was "inclusive of taxable costs."  Plaintiff attempts to insert ambiguity into the offer asserting because the offer included language which addressed Plaintiff's waiver of any right to attorney's fees, it "'implicitly or explicitly' provides that the judgment will not include costs – which renders it an invalid offer[.]"  Pl.'s Response to Mot. for Cost Sanction (Doc. 330) at 2–3 (citing *Herrera-Amaya v. Arizona*, 2019 WL 2724059 (D. Ariz. June 28, 2019)).  Plaintiff's reliance on *Herrera-Amaya* is misplaced.  In that case, defendants' offer letter "provide[d] that [p]laintiff must waive any claim to 'separate or additional award of attorney fees and/or costs, including attorney fees pursuant to 42 U.S.C. §§ 1983 and 1988.'"  *Herrera-Amaya*, 2019 WL 2724059 at *1.  The *Herrera-Amaya* court considered defendants' offer letter a valid offer of judgment pursuant to Rule 68; however, it also found plaintiff's incurred pre-offer attorneys' fees and costs plus the jury award exceeded the offer and sanctions were therefore inappropriate.

It is well established law that "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees" under § 1988, Title 42, United States Code.  *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (emphasis in original).  Plaintiff's prior counsel, Michael Moore stated unequivocally on the record that he was not taking a fee in this case.  Hr'g Tr. 5/4/2021 (Doc. 240) at 4:16–5:2.  Plaintiff was *pro se* at the time of Defendant Campas's offer.  Defendant Campas's offer of judgment reflects the posture of the case at the time it was served, and the language excluding any right to additional attorney fees reflects that

reality.  The offer is clear on its face, and even if the language regarding the waiver of attorney's fees created ambiguity, Defendant Campas's intention for the offer to be a full and final settlement is unequivocal.  *See Harrington*, 12 F.3d at 907 ("ambiguities [in a Rule 68 offer] will be construed against the offeror as the drafting party and, where such ambiguities are found to exist, extrinsic evidence of the parties' actual intentions will be examined to clarify those ambiguities and arrive at the meaning of the offer's material terms"); *see also Marek*, 473 U.S. at 6 ("many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff").

The Court finds Defendant Campas's offer of judgment was valid and properly served.

### C.  Availability of Sanctions

"[W]here the underlying statute defines 'costs' to include attorney's fees, . . . such fees are to be included as costs for purposes of Rule 68."  *Marek v. Chesny*, 473 U.S. 1, 9 (1985).  "Congress expressly included attorney's fees as 'costs' available to a plaintiff in a § 1983 suit[.]"  *Id.*  Thus, "[w]here a Rule 68 offer explicitly states that it is inclusive of prejudgment interest and pre-offer costs and attorneys' fees, the judgment to which the offer is compared must include these items if they are awarded."  *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003).

Plaintiff obtained a jury verdict of $10,000.04 against Defendant Campas.  Jury Verdict (Doc. 320).  In order to avoid sanctions pursuant to Rule 68, Plaintiff must have incurred attorneys' fees and costs prior to June 15, 2021, in excess of $9,996.00.  As discussed in Section II, *supra*, Plaintiff has not met that threshold.  As such, the Court will award costs to Defendant Campas.

Defendant Campas seeks total costs in the amount of $3,870.95 incurred after June 15, 2021.  This is comprised of $126.00 for a transcript from August 17, 2022, proceedings and $3,744.95 for daily transcripts during trial, February 13–16, 2023.  *See* Tr. Request 2/10/2023 (Doc. 302)  The Court finds Defendant Campas is entitled to a

1   portion of these costs.

2   Rule 54(d)(1), Federal Rules of Civil Procedure, provides that "[u]nless a federal

3   statute, these rules, or a court order provides otherwise, costs—other than attorney's

4   fees—should be allowed to the prevailing party."  "The cost of the originals of transcripts

5   of trials or matters prior or subsequent to trial, is taxable at the rate authorized by the

6   judicial conference when either requested by the Court, or prepared pursuant to

7   stipulation." LRCiv 54.1(e)(2).  Furthermore, "[m]ere acceptance by the Court of a copy

8   does not constitute a request." *Id.*  "[T]he decision whether to award costs ultimately lies

9   within the sound discretion of the district court." *Marx v. General Revenue Corp.*, 568

10  U.S. 371, 377 (2013).

11  The Court finds that Defendant Campas is entitled to $126.00 for the transcript

12  related to the August 17, 2022, proceedings.  As noted by Defendant Campas, the Court

13  requested that transcript (Doc. 269) and she also ordered a copy (Doc. 282). *See Def.*

14  *Campas's Reply* (Doc. 335) at 5.  Additionally, the Court relied on its review of a daily

15  trial transcript because Plaintiff filed a Motion for Reconsideration (Doc. 320) during the

16  trial.  Plaintiff sought reconsideration of the Court's decision that a punitive damages

17  instruction was not appropriate in this case.  Plaintiff further argued that she testified that

18  she had "told Officer Rosebeck, 'Don't go in my house.  Wait until I get there. I'll call

19  my dad.'"  Trial Tr. 2/16/2023 (Doc. 322) at 16:19–17:7.  Upon review of the transcript

20  of Ms. Williams's testimony, both in chambers and in court with the parties, the Court

21  determined that despite Ms. Williams's assertions, this was **not** her testimony. *Id.* at

22  20:12–24:23.  The Court requested the February 14, 2023, transcript from the Court

23  Reporter, and because not all parties had access to the daily transcripts indicated that his

24  Courtroom Clerk could print out the relevant portion for them. *Id.* at 19:25–20:10.

25  Because these requests were necessitated from Plaintiff's inaccurate recollection of her

26  own testimony, the Court finds an award to Defendant Campas appropriate.  The Court

27  will award $936.24, the cost for one daily transcript containing Ms. Williams's February

28  14, 2024, trial testimony.  The Court will, in its discretion, also award $286.09 because

this transcript was additionally made available to counsel in the settling of jury instructions.  Therefore, the total cost sanction against Plaintiff to Defendant Campas is $1,348.33.

## IV.    CARDEN *PRO BONO* COSTS

As discussed in Section II.B.2.d., *supra*, Mr. Carden has demonstrated out-of-pocket costs in the amount of $2,081.53.  The Court has reviewed the costs and their supporting documentation and finds the funds were necessarily incurred by counsel in the representation of Ms. Elizabeth Williams in this matter.  General Order 10-10 provides for the "reimbursement of actual and reasonable out-of-pocket expenses necessarily incurred by court appointed attorneys representing indigents in civil cases not covered by the Criminal Justice Act."  G.O. 10-10 § IV(d)(9).  Accordingly, the Court finds that payment of $2,081.53 to Mr. Carden is appropriate.

## V.    CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion for Attorney's Fees and Nontaxable Costs (Doc. 327) is GRANTED in part and DENIED in part.  The Court will grant Plaintiff pre-offer attorneys' fees for the Russo Law Firm which equal $1,348.33.  Plaintiff's motion is denied in all other respects for the reasons stated in this opinion.

IT IS FURTHER ORDERED that Defendant Campas's Motion for Cost Sanction Under Rule 68 (Doc. 324) is GRANTED in part and DENIED in part.  Defendant Campas's motion is granted regarding the request for sanctions based upon her Offer of Judgment; however, the Court has reduced the amount of sanctions to $1,348.33 for the reasons contained in this opinion.

IT IS FURTHER ORDERED that the Clerk of Court shall make payment of $2,081.53 to:  Joshua W. Carden (AZSBN 021698); c/o Carden Livesay, Ltd.; 419 East Juanita Avenue, Suite 103; Mesa, Arizona 85204.  **A copy of this Order shall be**

**forwarded to Ms. Debra D. Lucas, Clerk of Court.**

Pursuant to this Court's March 23, 2023 Order (Doc. 332), Plaintiff's Motion for Attorney's Fees and Nontaxable Costs (Doc. 327) had the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.  *See* Fed. R. Civ. P. 58(e).  This Order disposes of the same and begins the time to file an appeal.

Dated this 12th day of September, 2024.

Eric J. Markovich
United States Magistrate Judge